## Devall *against* Burbridge.

Partners must act with good faith towards each other, and if one of them be served with process in action against the firm, and judgment be obtained and execution levied upon the partnership property, it is his duty to give notice of it to his co-partners; and neglect to do so subjects him to an action.

There is discretion to be exercised by a court as to the time when evidence may be given, but it should not be entirely rejected on slight grounds.

ERROR to the Common Pleas of *Green* county.

William Devall against James W. Burbridge. This was an action on the case. This cause was once before in this court. See 4 *Watts & Serg.* 305, where it is fully stated. The statement of the facts now made by his honour who delivers the opinion of the court, renders any other unnecessary.

*Deford,* for the plaintiff in error.
*Biddle,* for the defendant in error.

The opinion of the court was delivered by

Huston, J.—In 1838–9, a steam-boat was built, owned by J. W. Burbridge & Co., J. W. Hielman & Co., Wm. Devall, Joseph Sedgwick, Samuel Sedgwick, Thomas Alfree, Thomas Hughes, Michael Shosnyder, William Walton and John Allison. By July 1840, it would seem, several of these had sold to Burbridge & Co., Hielman & Co., Ingraham; and we do not see in the cause who besides those named and Devall, had any interest. About that time the boat, which cost above $7000, was levied on and sold for $900 at Pittsburgh. Devall lived up the Monongahela, as did several of the original partners. Burbridge lived in Pittsburgh. This suit is an action on the case, alleging in substance that Burbridge had the care and management of the boat, the employment of the hands, and receipt and payment of demands, and so being agent, suffered the boat to be levied on for a small debt and sold for a small sum, he having funds in his hands to pay the debt; and for fraud and negligence in the matter.

This case was in this court before (See 4 *Watts & Serg.* 305), and remitted to the Common Pleas. That court had decided that on the plaintiff's evidence he could not recover. This court thought the cause ought to have been submitted to the jury, and on the facts proved there might have been a verdict for the plaintiff. Some evidence then given was rejected, and much was now given by the defendant, and some by the plaintiff, more than at the

[Devall v. Burbridge.]

former trial. In an early stage of the trial, the plaintiff proved the service of a notice on the attorney of the defendant, to take the deposition of William P. Walton. The deposition was taken on the 7th February, and filed 12th May. The trial came on the 13th June. The deposition was rejected because the deposition was not filed in a reasonable time.

The next bill of exception is to a question put by the defendant to Wm. Ingraham, who had related many circumstances relating to the sale of the boat, and his own subsequent purchase and sale again to Burbridge and Hielman & Co., of the same number of shares which they had owned before the sheriff's sale. There was no error in permitting the question to be put and answered. The plaintiff had proved that he paid to defendant for the boat, within a month before the sale by J. Sedgwick, $100 and a note at 60 days for $100, (we do not hear that this note was not available,) and $150 immediately before the sale. The defendant had called his clerk to prove that on the 9th July, before the time of sale, the boat owed Burbridge $346. The plaintiff after this offered Shosnyder to prove that Dogherty, clerk of the boat, had paid money, and how much, to Burbridge, and when and how the witness knew it. This was objected to as testimony in chief and rejected. In the trial of this cause half or more of the witnesses were called and examined twice, some of them oftener. The plaintiff began and made out a case as above. The defendant, I suppose because he thought it best to secure himself, showed a debt to himself which would absorb most of the money Devall had sent. The plaintiff then offered to repel this by proof that Burbridge had received other money from the boat not accounted for : to be sure the offer was awkwardly made, " to prove how much he had received and when," instead of a precise sum and definite time. Both parties have spoken of the witness called (Shosnyder) as a most respectable man. It might have been offered in the earlier stage of the cause, but it was now called for by what had just been sworn to on the part of the defendant, and ought to have been admitted. There was no allegation that the witnesses were gone away, and it does not tend to the due administration of justice to be too rigid as to the time and place of calling a witness. It went strictly to repel the effect of what the defendant had just proved. There is a discretion in a court as to the order of receiving testimony; but it must be a strong case which will allow a court to reject evidence because not offered at the right time, which may be decisive of the merits of the case. Devall had been told by one of those who was or had been a joint owner, that Burbridge had said he would let the boat be sold unless money was sent. He sent money, and Burbridge applied it to pay an alleged debt to himself due by the boat. I do not admit that he had a right to do so; but surely it was allowable to

[Devall v. Burbridge.]

the other party to give evidence to show there was nothing due to Burbridge. There were, as it often happens, two matters to be considered in the decision of this case: was Burbridge liable at all; and if so, for how much? Any body will allow that if he had funds to discharge the execution, the jury may and ought to give more than if he had none. There was error in rejecting this testimony.

After the testimony was heard, the plaintiff requested the court to charge the jury:

1. That if the jury believe from the evidence, that the defendant has been guilty of fraud in putting the steamboat Royal in jeopardy, in order to have a sale made so as to obtain an interest in her on better terms, they ought to find for the plaintiff.

2. If the jury believe the defendant, J. H. Burbridge, was the agent of the plaintiff, and did not keep him regularly advised and notified of the state of his interest in the boat, not only of the suit, but also of the judgment, levy and sale, he is liable to the plaintiff in this action.

3. The jury, if they find for the plaintiff, may give damages beyond the value of plaintiff's interest in the boat.

The court reply affirmatively to all the plaintiff's points, and add, "but we must observe on the 2d point, that it assumes the fact that the defendant was the plaintiff's agent, and we have not *been able to see any proof of special agency,* and it would be error in the court to submit it to you to find a fact without evidence. The defendant was a part owner, and had three times greater interest than the plaintiff in the boat. The boat was left at Pittsburgh, where the defendant lived; the other owners lived in this (Green) county. The debts were principally at Pittsburgh. It was natural therefore, probably inevitable, that the defendant should, after the boat was laid up, have greater charge over her, and greater agency in settling the debts, than the other owners. There is no evidence of any other agency than that which arose from the relation of joint owner. We must also remark on the 1st and 3d points, that fraud is never to be presumed, but must always be proved, and the proof ought to be clear and satisfactory." It is alleged there are several errors in this.

It is always pleasant to a judge to find what is his own opinion already settled by high authority. In 2 Kent's Com. 612, we find "agency is founded upon a contract either express or implied, by which one of the parties confides to the other the management of some business, to be transacted in his name or on his account, and by which the other assumes to do the business and to render an account of it. The authority of the agent may be created by deed or writing, or verbally without writing; and for the ordinary purposes of business and commerce, the latter is sufficient. *The agency may be inferred from the relation of the parties and*

[Devall v. Burbridge.]

*the nature of the employment, without proof of any special ap-
pointment."*  I presume by the words " special agency," the judge
meant " special appointment of the defendant as agent;" but either
way, it is equally the duty of a general or special agent, and
whether by direct appointment or agency " to be inferred from
the relation of the parties and the nature of the employment," to
give notice of such an occurrence as a suit and judgment and levy
and advertisement of the property.  Even in case of partnership
in a store, where one is in possession and transacting the business,
and the other at a distance of 60 or 100 miles, I should suppose
no judge would say there was no negligence in omitting to give
the absent partner notice; and if we add to this that the partner
on the spot went bail for the price of the purchase and paid it,
and if not on the same day certainly very soon after became again
owner of the same interest that he had before the sale : if all this
resulted in a loss of his interest to the absent partner and a gain to
the other, it would be difficult to find a court or jury to sanction
such conduct.  The answer in this respect is incorrect.  The
partner on the spot has in law a right to act for all generally, but
where, as in this case, there were many partners, it is not a great
impropriety in language or law, to speak of him as agent of the
distant partner.  The expression that " fraud is never to be pre-
sumed, but must be proved," though often used when addressed to
a jury, has led to much individual injury, and when it is added,
" and the proof must be clear and satisfactory," is calculated to
mislead many jurors.  They understand it that the proof must be
direct, and by witnesses who were present and heard the dishon-
est action planned, and saw it carried into effect.  Such a case
seldom occurs.  The design is kept secret, and the fraud is proved
from circumstances.  To be sure it is not to be inferred from
slight grounds.  Murder is not proved in one case in ten by wit-
nesses who saw the person slain, and yet the murderer seldom es-
capes punishment.  If facts and circumstances are proved which
could not have happened if the accused was innocent, a jury con-
victs.  Theft is always secret, yet the thief is convicted on proof
which satisfies the jury that he stole.  The fraudulent man sel-
dom tells his plan or consults any but his partners in the fraud as
to the mode of effecting it, yet a jury may find there was fraud
even if the secret partners are called as witnesses and swear there
was no fraud.  But this is not to be done lightly.  Every thing
proved, and all fair inferences from what has been proven, are to
be carefully considered and weighed; the verdict ought to be the
result of full conviction, and it would be well that a judge should
explain this, that fraud is not to be presumed but proved, so as that
it will not mislead.

The judge, after answering the points, gave a general charge
to the jury, almost every sentence of which is excepted to as er-

[Devall v. Burbridge.]

ror.   The charge begins by stating that the defendant is his *agent for reward,* and recites the substance of the declaration, and repeats that there was no proof that the defendant was the plaintiff's agent, " *we think."*   This cause goes back again to be tried, and the deposition, or if he is living and has returned to the state, his testimony, will prove that Burbridge told him he had got authority to manage the boat from so many of the owners, and among the rest from Devall, as to give him the control of the boat, and on this assertion Walton gave him a written authority from himself; and it is in proof in this cause, that after this he appointed the captain and clerk, and when the water got low she was left in his care.   There will then be an end of the assertion that there was no authority or agency beyond what arose from being partner, and an increased responsibility for not giving notice.   That he told one of the former partners at some time, but we do not know when, that if the partners did not pay up he would let the boat be sold, is proved by that partner; but it is not proved that he told him to inform Devall, or that he told him a suit was brought or a levy made on the boat; and that partner swears he knew nothing of this until he came to Pittsburgh, three days before the sale.   I must take it the note for $100 has availed; if so, the plaintiff had paid to the defendant all the money he received before the sale, although this, as to part, is denied.   The court ought to have left the credit of the two witnesses as to this fact to the jury.   As to the $140 which was to have been collected in Green county, that will be, I suppose, more clearly explained at the next trial.   The plaintiff's counsel say the debtor was notoriously insolvent.   It is a little remarkable that although this cause was argued with great ability, yet there is in many parts of it great uncertainty as to the time when things were done and spoken.

I have said this suit may be supported on negligence in not giving notice; but for this alone the damages might be small, and the great point in the cause is fraud in the defendant : whether he had funds and let the boat be sold, or even if he had none, procured her or connived at her being sold at an undervalue without notice to plaintiff.   Within two days of the sale, his clerk returned from a journey through Green county, and no letter nor message to Devall was sent by him.   The fact that although Wilson's clerk bought the boat, we do not hear of his paying the overplus, after the payment of Wilson's debt to the sheriff; that almost immediately Burbridge and Ingraham and Hielman & Co., all former owners of parts, became sole owners; in fact, the whole material facts in the cause are stated, and the law arising from them, by the Chief Justice, in the opinion (4 *Watts & Serg.* 305) when the cause was here before, and I refer to that as the present opinion of this court, and would advise the judge who

VI. — 2 U *

[Devall v. Burbridge.]

tries the cause to refer to it as his guide, unless an essentially d'f-ferent state of facts shall appear at the next trial.

Judgment reversed, and a *venire de novo* awarded