# Continental Insurance Co. *versus* Delpeuch.

1. In an action on a policy of insurance the defendant company having neglected to give the bail absolute required of a foreign corporation by Act of March 21st 1849, their appeal from an award of arbitrators was stricken off and pending a rule to show cause why recognisance on the appeal should not be perfected, the parties to the suit filed a written agreement conditioned that the decree striking off the appeal should be annulled, the case tried under the limitations of the agreement and the defence confined to proof of suicide only. *Held*, that defendant could not allege a defective summons nor an irregular award in the suit, for, if the rulings of the court below on these matters had been originally erroneous they were cured by the subsequent agreement between the parties. *Held*, further, that it was too late for the company to allege that the agreement was executed through ignorance or misapprehension of facts connected with the issuing of the policy.

[Continental Insurance Co. *v.* Delpeuch.]

2. The opinion of the wife of the insured expressed in the lifetime and in the absence of her husband cannot affect the right of action in this case nor can her declarations be proved when they will affect the right of others interested in the estate, and it was also irrelevant to show that after her husband's death she had settled the loss on an accidental policy and had received the money.

3. It was not error to reject an offer to prove by parol the contents of another policy issued to decedent, no notice having been given to produce it, or an offer to prove that decedent wanted to procure from an insurance agent an accidental policy for one year, to be paid in case of death only, without averring any time when alleged conversation was held or proposing to follow it by evidence that the policy was procured.

4. It was not error to reject evidence of the opinion of a witness who was not shown to be an expert in regard to the action of the water of a stream, when all the facts on which his opinion was predicated had been proved and the witness was not shown to be any more competent than the jury to draw an inference from these facts.

5. The order in which testimony may be admitted depends on the discretion of the court, and it was not error therefore to permit plaintiff to more fully examine a witness as to conversations to which she had testified when called and cross-examined by defendant.

6. A legal conclusion of suicide is not to be drawn from the mere fact of a belief in spiritualism.

7. The fact that in this case the decedent before his death pointed out to his wife what property was his and what was his tenant's, had no natural connection with suicide and was properly withheld from the jury.

8. The party alleging suicide must prove it, and the mere facts of death in an unknown manner and that the body is found without any marks of violence do not create a legal presumption of suicide.

June 1st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Bradford county :* Of January Term 1876, No. 36. Certified from Eastern District.

This was an action of assumpsit, brought by William J. Delpeuch, executor of Valentine Smith, deceased, against the Continental Life Insurance Company of Hartford, Connecticut, to recover $10,000, the amount of a policy of insurance upon the life of said Smith issued by the defendant company.

The application was made by Smith on the 20th of December 1870, and was accepted and the policy issued on the same day by the company, at an annual premium of $448.80. It was stipulated in the policy that the $10,000 should be paid ninety days after due proof of Smith's death, which occurred on the night of September 16th 1873. Smith left his home in Sheshequin on the night in question at about half past 10 o'clock for the alleged purpose of going to Ulster to procure medicine for a sick daughter. Sheshequin lies on the east and Ulster on the west side of the Susquehanna river, and there being no bridge at this point, the usual mode of crossing is by ferry or by fording. Smith not returning after a lapse of several hours, search was made for him, and his horse was found wet up to his neck and mane on the Sheshequin side of the river, and in the morning Smith's dead body was found in the river

a few rods below the fording place. Proof of his death was duly made and received by the insurance company, who refused to pay the amount of the policy, alleging as the reason for their default, that Smith had committed suicide, and that the policy contained a clause, that if the assured should die by his own hands either voluntarily or involuntarily, sane or insane, the policy should be void. This action was brought to secure the amount of the policy with interest from February 1st 1874.

The original process in the case was directed to the sheriff of Philadelphia county, "to serve the same upon D. S. Burnham, general agent and attorney for said company, at No. 430 Walnut street, Philadelphia."

The return was, "Served the Continental Life Insurance Company of Hartford, Connecticut, by giving a true and attested copy of the within writ to D. S. Burnham, general agent," &c.

It was alleged by defendant that the sheriff of Philadelphia county had not made a legal return of service of the process, and to contest its validity counsel entered their appearance *de bene esse* for the company, who obtained a rule to show cause why the proceedings should not be quashed, which rule, after argument, was discharged.

Smith's executor then entered a rule to have arbitrators chosen, a copy of which rule was served upon defendant by giving the same to the counsel who had appeared to contest the validity of the service. Arbitrators were chosen and an award filed in favor of plaintiff for $10,385. The company appealed from this award and filed a recognisance in the sum of $200, conditioned for the payment of costs only. Plaintiff then asked that the appeal be stricken off, on the ground that this recognisance was not such as is required by the Act of March 21st 1849, which provides that in all such appeals by foreign corporations, bail absolute shall be given for the payment of such sum as shall finally be adjudged to be due to plaintiff, and the appeal was stricken off by the court. Counsel for defendant then procured a rule to show cause why the recognisance should not be perfected, and pending this rule the following agreement was entered into :—

"And now, February 3d 1875, it is agreed that the judgment and decree of said Court of Common Pleas in this case, by which the appeal by defendant from the award of arbitrators was stricken off, be annulled, provided that said defendant shall, within ten days from the date hereof, perfect said appeal by giving good and sufficient bail, in the nature of bail absolute, in the sum of twelve thousand dollars, for the payment of such sum or sums as shall be finally adjudged to be due to the said plaintiff, together with interest and costs thereon. And it is agreed that such bail may be taken and approved before the President Judge or Assistant Law Judge of the Court of Common Pleas of Luzerne county,

[Continental Insurance Co. v. Delpeuch.]

Pennsylvania, and be filed in said Court of Common Pleas of Bradford county. And it is further agreed that said case shall be tried in said Court of Common Pleas of Bradford county before said court (and a jury), and that the same shall not be removed into any other court or jurisdiction; provided, however, that either party may carry the same into the Supreme Court of Pennsylvania for any alleged error (which may be reviewable) on the trial in said Court of Common Pleas of Bradford county. And it is further agreed, that upon any trial of said case in said Court of Common Pleas of Bradford county, said defendant shall not set up nor attempt to maintain any defence, except that said Valentine Smith came to his death by an act of suicide.

[Signed,]          PEET & DAVIS,
                   Attorneys for plaintiff.
[Signed,]          SMITH & MONTAYNE,
                   Attorneys for defendant."

On the trial before Morrow, P. J., defendant, to sustain its allegation of suicide, relied upon the following facts and circumstances disclosed by the testimony on its behalf: That Smith was a spiritualist and had peculiar and eccentric notions about religion and death; that he professed to have communications from the spirit world, and believed that after death he could, from the spirit land, control his affairs in this world; that at the time of his death he was involved financially; that he had discussed what was the easiest mode of dying, and had expressed the belief that drowning was; that he declared his creditors should have no concern, that he had a life insurance, and had beaten insurance companies before and would beat this one; that there was no need to cross the river to see a physician, on the night of his death, as there were two in his village; that he divested himself of certain portions of his apparel before leaving his house, laying aside his watch and pocket-book; that his body was found in shallow water, about fifty feet from the shore, and with no marks of violence and that he was an expert swimmer; that the dead body of a man would be carried by the current of the river in an opposite direction from that where found, and that if Smith had lost his way, and gotten into the deep water, his body could not have drifted into the shallow water where found.

There was evidence on the part of plaintiff, that Smith was cheerful and rational on the day previous to his death; that he had changed his clothes at the suggestion of his wife, and hung up his watch as was his habit; that the night was foggy and dark; that the horse was found with his mane and tail wet; that his tracks were discovered leading into deep water below the fordway; that a body would drift from the deep water into which the horse's tracks led to the point where the body of Smith was found, and that there was a contusion on his head near his eye.

[Continental Insurance Co. *v.* Delpeuch.]

The questions raised were submitted in twenty assignments of error, which are herewith presented as briefly as a proper understanding of them will permit, and for convenience in the order in which they are reviewed in the opinion of this court.

The first and second assignments of error were the refusal of the court to quash the return to the writ on the ground that there had been no legal service on the company; and to grant an appeal from the award of arbitrators made against defendant.

Tenth assignment, the rejection of the offer of defendant to show a suicidal tendency in Smith's family and to prove that Smith's brother had committed suicide, and that decedent had fraudulently concealed this fact from the company.

The eleventh assignment, in rejecting the above offer because it was in conflict with the agreement of February 3d 1875, stipulating that the company should not set up any other defence than suicide; the company averring that said agreement had been procured from its attorneys under legal duress, and that the fraudulent concealment of the death of Smith's brother by suicide had only come to the company's attention since decedent's death.

The ninth assignment, the rejection of defendant's offer to prove by a witness that in 1861 he was in the employ of Smith, whose wife requested him one day to accompany her to the barn, as Mr. Smith had just gone there, having threatened to hang himself.

Twelfth and sixteenth assignments, the rejection of offers by defendant, for the purpose of rebutting and contradicting the evidence of Mrs. Smith, to prove by witness that Mrs. Smith had called on witness and wanted to get a horse from him to sell in order to pay premiums that were about to fall due on a policy of life insurance; that she said that Valentine Smith was not going to live long, and that his life insurance was their only salvation; and that deceased had told her before his death to go to witness and to get the horse to raise money for the purpose named.

The thirteenth, fourteenth and fifteenth assignments, the rejection of offers to prove by an insurance agent that before his death the decedent called upon witness to procure an accidental policy, payable only in case of death, to run for one year only, and that a policy was accordingly issued for $5000; and to prove by asking the widow of decedent if the latter had not informed her that he had taken out this policy, and that she had received the amount of the policy after his death.

The fifth assignment was the rejection of an offer to prove by witness that he had made a trial of the river when the water was about the same stage as when Smith was drowned, and that a boat placed on the surface of the water near the lower side of the ford floated to the opposite shore from where Smith's body was found, and that witness was familiar with the river, and that in his judg-

[Continental Insurance Co. *v.* Delpeuch.]

ment the current where the test was made was the same as when decedent was drowned.

The seventeenth assignment was the admission of evidence on the part of plaintiff to prove as rebutting evidence that a body getting into the river on the Sheshequin side of the ford and below the ford would float into the cove where decedent's body was found, and that at the time of the drowning there was an eddy just below where the body was found, and a current on the east side of the river along a gravel bar.

The eighth assignment was the rejection of defendant's offer to prove by witnesses as experts that it was physically impossible for the body of a man being in the water on the day decedent was drowned to float to the point where Smith's body was found.

. The eighteenth assignment was the admission of offer of plaintiff to prove by Mrs. Smith conversations between herself and husband, between herself and other persons, and between her husband and other persons when she was present, to which conversations her attention had been called by defendant when called and cross-examined on part of defendant.

Defendant offered to prove by witness that decedent had had frequent conversations with him relating to spiritualism, immediately preceding his death, in which he stated that he could have communication with his family, and conduct his personal affairs, the same after death as before, at which times he also talked of drowning as the easiest method of dying; that it was a momentary struggle only and all was over; and that a man drowning would see beautiful scenes; and would always remain in that state, after drowning, in his spiritual existence.

The court admitted evidence of conversations as to drowning, and that decedent was what was called a spiritualist, and rejected the rest of the offer, which constituted the third assignment of error.

Defendant also offered to prove by witness that Smith declared before his death his belief in spiritualism; his belief that he would exert the same control over the management of his property after .death as in life; that he would hold communion with his family after death; that he had information from the spirit world that he would not live a long time, and would die a violent death; to be followed by evidence of his making preparations immediately before his death, anticipating that event, together with the circumstances attending his death. Admitted as to the fact that decedent was a spiritualist, but rest of offer rejected. This was the fourth assignment.

The sixth assignment was the rejection of offer to prove by witness that, before decedent's death, witness was in the barn with him and Mrs. Smith, and decedent pointed out to his wife which was his property and which that of his tenant.

The nineteenth assignment was in affirming the first point of plaintiff, as follows:—

[Continental Insurance Co. *v.* Delpeuch.]

"That the defendant in having put in the defence, that the assured came to his death by suicide, the presumption of law is, that when death is either by accident or suicidal that he came to his death by accident."

The twentieth assignment was in refusing to affirm defendant's eighth point, which was in these words: "It being an admitted fact in the case that the decedent was a swimmer, and that his dead body was found in water only seventeen inches in depth, and without any marks of violence upon it, the presumption of law is, that his death was by suicide."

The court in the general charge said: "Do you believe Smith's death was an act of suicide? If you do believe it, then it is necessary for you to consider all the plaintiff's rebutting testimony. And here it is proper to remark again, the burden is on the defendant; the presumption is the drowning was accidental. The evidence of the defence must overthrow this presumption and establish the fact of suicide, or else the defence fails. If he were insane and was drowned accidentally the defence fails.

"We cannot say that a belief in what is called spiritualism excites to self-murder, or tends thereto. The evidence that Smith was a spiritualist was admitted, because his declarations relating to short life, violent, sudden death, &c., were in connection with that belief, and because death by drowning followed so soon after these declarations were made. Indeed, no one fact proved by the defendant makes out the defence; but it is claimed by defendant's counsel that all their evidence taken together establishes the fact of suicide; and yet, gentlemen, may not all these facts be true, and Smith's death have occurred by accidental drowning? This is a matter for your consideration."

The verdict was for plaintiff for $11,000, and defendant took this writ of error, and the assignments of error were those heretofore enumerated.

*Smith & Montayne* (with whom was *William McCandless*), for plaintiff in error.—The service upon the company was illegal and inadequate. It does not aver to have been made on the agent of the company, but only on D. S. Burnham, general agent. It does not allege or pretend that the agent of the company had been served. The court should have granted an appeal from the award of arbitrators, because notice of this rule was not served on defendant nor its agent, but only upon its attorneys *de bene esse*, who came in to contest validity of service and whose functions ceased when this issue was determined. The agreement entered into by the parties should not have been an obstacle to the introduction of testimony to show that decedent had perpetrated a fraud upon the company. The agreement itself was invalid, obtained as it was, and

[Continental Insurance Co. *v.* Delpeuch.]

should not have been interposed as a bar to proof that the policy itself was invalid.    The offers to show by declarations of decedent's wife and others, that a suicidal mania possessed him; that he appeared to be setting his house in order, and that he was in contemplation of suicide, should have been admitted.   According to the theory of plaintiff, decedent, when attempting to cross the stream, was drowned, and his body floated into the shallow water some forty or fifty feet from the edge of the gravel bar on the Sheshequin side. It was therefore competent to show by persons intimately acquainted with the eddies and currents of the river, that it was impossible for a body to float in the direction where Smith's body was found.   The opinions and convictions of decedent upon spiritualism and death, long entertained and frequently and unhesitatingly expressed, predisposed a morbid mind to thoughts of death, and it was error to limit his conversations to the time immediately preceding his demise, and when the court admitted evidence of the spiritualism of decedent, it was error to exclude what he believed he could do in the spiritual world, for such hopes could not fail to lessen his fears of death. Medically speaking, the drowning is presumptively suicidal when there are no marks of violence, and where the body is found in shallow water : Burrill on Circumstantial Evidence, p. 716.

*Patrick* and *Davies & Carnochan* and *H. Peet*, for defendant in error.—The sheriff was directed to serve the summons on the general agent of the company, and he returns that he did so serve it, and it is not pretended that D. S. Burnham was not the general agent of the company; but admitting that the service was inadequate, the plaintiff in error is precluded from urging this defence by the agreement of February 3d 1875, which provides for a trial by jury, and which was the voluntary act of the company.   For like reasons the company was estopped from alleging error as to the award, and from offering the testimony in regard to a suicidal tendency in Smith's family.   The offers in regard to the accidental policy were an attempt to get before the jury, by parol, the contents of a written instrument, and were properly rejected.   The burden of proof is upon the party who alleges suicide and it is not to be presumed from the fact of death and its circumstances, but must be proved.   The question of suicide was purely one of fact, and entirely for the jury.

Mr. Justice MERCUR delivered the opinion of the court, October 9th 1876.

If originally the rulings covered by the first and second assignments were erroneous, they were cured by the subsequent agreement.   It stipulated "that upon the trial of said cause * * * said defendant shall not set up nor attempt to maintain any defence,

except that the said Valentine Smith came to his death by an act of suicide."

The plaintiff in error cannot now allege a defective service of the summons, nor an irregular award of arbitrators. In an attempt to appeal from the award, the company had neglected to give the bail absolute, which the Act of Assembly requires from a foreign corporation. The time fixed by the statute for perfecting the appeal had expired. A rule to show cause why the appeal should not be stricken off had been made absolute. It is true, more than a month thereafter, the court granted a rule to show cause why the recognisance on the appeal from the award should not be perfected. Whether the court then had any power to grant the relief asked for, it is not necessary now to decide. Without waiting for a decision of the court, the parties, by agreement in writing filed, stipulated that the judgment and decree of the court by which the appeal had been stricken off be annulled, the bail be perfected and the case be tried under the limitations and restrictions stated in the agreement. It confined the defence to proof of suicide only. It was by virtue of that agreement only the plaintiff in error acquired a right of trial in the Common Pleas. Having accepted its benefits, and enjoyed the rights thereby given, the company cannot now repudiate a part of the agreement. It contravened no rule or policy of law. All the stipulations therein are binding on the parties. It was too late for the company to allege that the agreement was executed through ignorance or misapprehension of facts connected with the issuing of the policy. The same reasons require the dismissal of the tenth and eleventh assignments.

We are unable to discover any error in the rejection of the evidence covered by the ninth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments. An opinion expressed by Mrs. Smith in the lifetime and in the absence of her husband, cannot affect the right of action in this case. Her declaration could not affect the insured, for she was not authorized to act for him in the transaction. It cannot affect her, because she then had no interest in the matter (1 Greenl. Ev., sect. 179), nor can her declarations be proved when they will affect the rights of other persons interested in the estate. The others did not derive any interest from her. Each has a separate and distinct interest in the fund. Their rights cannot be destroyed by her admissions or declarations: Boyd v. Eby, 8 Watts 66. Hence, it was irrelevant to show that, after her husband's death, she had settled the loss on an accidental policy, and had received the money; nor was it admissible to prove, by parol, the contents of another policy issued to Smith, no notice having been given to produce it; nor was it relevant to show that Smith wanted to procure from an insurance agent an accidental policy for one year, to be paid in case of death only. This offer does not aver any time

[Continental Insurance Co. *v.* Delpeuch]

when the alleged conversation was held, nor propose to follow it by showing the policy was procured.

Any error made in the rejection of evidence covered by the fifth assignment was subsequently cured. The plaintiff in error afterwards, without objection, proved by several witnesses, that from the fordway the current of water flowed towards the side of the river, opposite to where the body was found. This fact was not controverted. The evidence objected to, in the seventeenth assignment, was not in conflict with it. The two facts were consistent with each other. The theory of the plaintiff in error was, that if Smith had fallen into the water at the fordway the body would have floated to the Ulster side of the river. The company therefore assumed that Smith was not drowned in attempting to cross at the fordway. Hence, it contended he had intentionally drowned himself at or near the place where his body was found. The defendant in error, conceding the current of water from the fordway to be as claimed by the opposite party, contends that Smith did not fall into the water at that crossing, but several rods below, where the water was deep. The fact that the water was deep a few rods below the fordway is not controverted. The night was dark and foggy. Some evidence was given of the tracks of the horse indicating he entered the water at this lower point. As tending to prove the horse had been in deep water it was shown he was wet on his neck, under his mane. It was therefore entirely pertinent to show that a body getting into the water at this lower point would float to the spot where the body of Smith was found.

Sufficient ground had not been laid to sustain the eighth assignment. The witness was not shown to be an expert in regard to the action of water. All the facts on which his opinion was predicated had been proved. The witness was not shown to be any more competent than the jury to draw an inference from those facts. There was, therefore, no error in rejecting evidence of his opinion.

The order in which testimony may be admitted depends much on the discretion of the court : Richardson *v.* Stewart, 4 Binn. 200 ; Curren *v.* Connery, 5 Id. 489 ; Devall *v.* Burbridge, 6 W. & S. 529 ; Levers *v.* Van Buskirk, 4 Barr 310. The court, therefore, committed no error in permitting the defendant in error to more fully examine Mrs. Smith as to conversations, to which she had testified when called, and cross-examined by the plaintiff in error. The eighteenth assignment is not sustained.

We see no error in the third and fourth assignments. The policy on which this action was brought, issued the 20th December 1870. Smith was drowned the 16th September 1873. No allegation is made that any intent to commit suicide existed when the policy was procured. The court was very liberal in admitting evidence of acts and declarations of Smith, for many months preced-

[Continental Ins. Co. *v.* Delpeuch.]

ing his death, bearing on the question of suicide. Some of the evidence was very remote. We are unable to see that his belief in "spiritualism" or the fact that he believed he would enjoy all the pleasures of this life after death, was evidence of suicide. To conclude otherwise is to assume that the expectation of greater enjoyments in a future life than in this creates a suicidal desire. If this reasoning be correct it would follow that a devout Christian who believes in a blessed immortality is more likely to commit suicide than one who believes in no God and in no resurrection. The desire of self-preservation is firmly imbedded in human nature. A legal conclusion of suicide ought not to be drawn from the mere fact of a belief in spiritualism.

The offer contained in the sixth assignment may not be weaker than some evidence which was admitted. At first we were inclined to think its rejection was error. A more careful consideration has failed to make the error so clear as to call for a reversal. The mere fact that Smith pointed out to his wife what property was his, and what was his tenant's, has no natural connection with an intention to commit suicide. It would be unreasonable to give it that effect. The act is entirely consistent with the conduct which usually characterizes persons engaged in his occupation. It did not tend to prove the crime alleged. It was, therefore, properly withheld from the jury. If the rejection was an immaterial error, working no injury to the plaintiff in error, it is no ground for reversal: Hulings *v.* Guthrie, 4 Barr 123.

We see no error in the nineteenth and twentieth assignments. The party alleging suicide must prove it. The mere fact of death in an unknown manner creates no legal presumption of suicide. Upon evenly-balanced testimony the law assumes innocence rather than crime. Preponderating evidence is necessary to establish the latter. Nor does the fact that the body was found without any marks of violence on it create a legal presumption of suicide. The condition in which the body was found was submitted to the jury, under an accurate charge. The learned judge called their attention to the facts proved, and the conclusions sought to be deduced therefrom. The case was fairly tried on its merits. We see no sufficient ground to disturb the judgment.

Judgment affirmed.